TOBIAS SIGEL ¡v. GEORGE S. HOSMER, CIRCUIT JUDGE OF WAYNE COUNTY.

CAPIAS — SUFFICIENCY OF AFFIDAVIT TO HOLD TO BAIL.

Relator applied for *mandamus* to compel the respondent to vacate an order to hold to bail, enter an order for the release of the relator, and annul his bond given to the sheriff. An order to show cause was waived by the respondent, and on October 21, 1896, a writ of *mandamus* was granted.

*Morse Rohnert,* for relator, contended:

1. The affidavits fail to set forth facts in detail having the weight and dignity from which, if in evidence, a jury could draw conclusions on which to base a verdict for plaintiff; citing *Sheridan v. Briggs,* 53 Mich. 569.

2. Before a recovery can be had plaintiff must show, by competent testimony, that the treatment given constituted malpractice; that the only evidence admissible to prove malpractice is the testimony of expert witnesses, namely, physicians; citing *Wood v. Barker,* 49 Mich. 295; *Spaulding v. Bliss,* 83 Id. 311; that there is no affidavit attached of any physician saying, or giving it as his opinion, that the treatment was insufficient or improper.

3. That an affidavit to hold to bail must set up facts on personal knowledge tending to establish the wrong complained of; citing *Sheridan v. Briggs,* 53 Mich. 569; *Stensrud v. Delamater,* 56 Id. 145; *Howell v. Circuit Judge,* 88 Id. 366; *Moyle v. Circuit Judge,* 97 Id. 636; that this case is ruled by *McCrea v. Circuit Judge,* 100 Mich. 375.

*R. C. Barnes,* for respondent, contended:

1. That the affidavit of the plaintiff sets forth in detail the facts and circumstances of her treatment by the relator, and charges directly a criminal operation, resulting in a miscarriage, which facts and circumstances are alleged to be within her personal knowledge.

2. That the facts and circumstances of the case require no expert testimony to give them the dignity of evidence; that plaintiff's affidavit is a substantial compliance with the requirements of the statute, and is clearly within the rule laid down in *Watson v. Judge,* 40 Mich. 729; *Pease v. Pendell,* 57 Id. 315; *Hatch v. Saunders,* 66 Id. 181; that a criminal operation being alleged against the relator, the affidavit is sufficient since it states facts that would make a *prima facie* case on a criminal trial; citing *Pease v. Pendell,* 57 Mich. 315.

*Morse Rohnert,* for relator, in answer to the contention of respondent's counsel, contended:

1. That respondent's brief is based on the theory that plaintiff's affidavit charges a criminal operation; that the affidavit does not so charge, but does charge that the treatment was given by the relator for the purpose of curing a certain illness from which plaintiff was suffering; that plaintiff engaged relator to treat her for an illness which she describes as "something wrong with her womb as she could not walk well;" that relator accepted and entered upon such employment only to treat her for such illness; that plaintiff then alleges the treatment but only in a very general and vague way, and charges that the treatment was reckless, negligent, careless, wanton, rough, and unnecessary in and about said curing; that thereby and because of said reckless, negligent, and unnecessary operation, and not for any other cause, a miscarriage happened; that plaintiff does not charge an intentional act done for the purpose of procuring a miscarriage, but only charges that an unnecessary miscarriage happened by reason of the recklessness and carelessness of such treatment; that she does not claim that she engaged the relator for the purpose of having him procure a miscarriage, but that she engaged him to treat her for a certain illness, and that relator, in and about such treatment, acted carelessly and unskillfully, and thereby produced an unintentional miscarriage.

2. That the affidavit of Dr. Kemberling says nothing about the treatment; that no intent to procure an abortion being charged it is simply a question of whether or not the relator used due and proper skill and care; that the principles laid down in relator's original brief determine the case, and the *mandamus* should issue.

The facts as alleged in the petition for *mandamus* were:

1. That on July 7, 1896, the relator was arrested upon a *capias ad respondendum* issued at the suit of Augusta Pieschke from the circuit court of the county of Wayne; that in the affidavit to hold to bail made by said plaintiff it was averred:

*a*—That affiant would say on her personal knowledge that on April 29, 1896, at the city of Detroit she, at the request of relator, a physician and surgeon, employed him to attend affiant, and to bestow the care, diligence, and attendance of relator as such physician in and about endeavoring to cure affiant of a certain illness under which she then labored for reward to be thereafter paid to relator, who accepted and entered upon such employment as such physician.

*b*—That relator not regarding his duty, but contriving and intending to injure affiant in this respect, did not nor would use due and proper care, skill, or diligence in and about endeavoring to cure affiant of said illness, but on the contrary thereof conducted himself in an ignorant, unskillful, and negligent manner in that behalf in this: that on the day aforesaid relator inquired of affiant as to the cause of her illness; that affiant told him she did not know, that there must be something wrong with her womb as she could not walk very well; that relator then and there examined affiant, and said to her that she was in a family way; that there was something there that must come away; that it was either a chunk of blood or the afterbirth; that relator placed five pills in affiant's mouth, at the same time telling her to use a syringe every two hours.

*c*—That on April 30, 1896, relator visited affiant; that he brought with him his surgical instruments, and without the attendance of any other physician recklessly, negligently, wilfully, carelessly, wantonly, roughly, and unnecessarily introduced said instruments into affiant's womb, operating upon affiant, taking from affiant large quantities of blood and shreds, thereby lacerating the parts, rupturing the blood vessels thereof, causing the loss of an unusual quantity of blood, and thereby rendering affiant sick, sore, weak, disordered, and dangerously ill for a long space of time from thence hitherto; that at the time of said operation affiant had been pregnant for about three months; that on May 19, 1896, she was prematurely delivered of a child; that the death and premature delivery of said child were caused by the operation unnecessarily performed as aforesaid, and from no other cause; that by reason of the premises affiant became and still is greatly injured in her health and constitution, suffered great and unnecessary pain and anguish, was and is reduced and weakened in body, and her recovery from said illness has been and is thereby retarded and delayed, to her damage $5,000.

[A jurat was appended to said affidavit, stating that the affiant made oath that she had heard said affidavit read, knew its contents, and that the same was true of her own knowledge, except as to those matters which are therein stated to be on information and belief, and as to those matters she believed them to be true. EDITOR.]

2. That one Isaac O. Kemberling made an affidavit, in which it was averred:

*a*—That affiant was a practicing physician of the city of Detroit, and the family physician of plaintiff; that on June 25, 1896, he was called to attend plaintiff; that after a careful examination he found plaintiff in a very much exhausted condition; that she was very nervous, and suffering from a constant loss of blood and from a congested uterus, from which blood was then flowing in considerable quantities.

*b*—That he was informed by plaintiff, and verily believed that plaintiff, was suffering from the results of a surgical operation performed upon her by relator, and from a miscarriage which occurred on May 19, 1896, as the result of an operation performed upon plaintiff on April 30, 1896, by relator, who had been called to treat plaintiff for an illness of which she was then suffering; that at the time of said operation relator introduced surgical instruments into plaintiff's womb, and took from her large quantities of blood, shreds, etc.; that ever since said operation plaintiff has constantly had a discharge of blood in large quantities; that since June 23, 1896, plaintiff has been and still is under the

care of the affiant as attending physician.

[A jurat in the same form as before given was attached to this affidavit. EDITOR.]

3. That relator was released from arrest on giving appearance bail as required in the order to hold to bail.

4. That relator moved said circuit court to vacate said order to hold to bail; that said motion was argued before respondent, who on July 27, 1896, denied said motion; that relator has not yet put in special bail in said cause.